**In re DEF INVESTMENTS, INC., Debtor.**

**Bankruptcy No. 4–95–2137.**

United States Bankruptcy Court, D. Minnesota.

Sept. 21, 1995.

---

Jon C. Nuckles, James L. Baillie, Fredrikson & Byron, Minneapolis, MN, for debtor.

Thomas F. Miller, Lommen, Nelson, Cole & Stageberg, Minneapolis, MN, Daniel R. Kelly, Mansfield & Tanick, P.A., Minneapolis, MN, for petitioning creditors.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on July 20, 1995, on a motion by the Debtor, DEF Investments, Inc. ("DEF"), seeking to vacate the order for relief entered by this Court on June 9, 1995, and further requesting a dismissal of this involuntary Chapter 7 case. Alternatively, DEF requests that this Court amend the findings and conclusions it made in connection with the order for relief in a memorandum order entered on June 15, 1995 (the "prior Memorandum").[1] Appearances were noted in the record. The Court, having heard the arguments of counsel, studied the papers, and being duly advised in the premises, issues this Memorandum Order.

### BACKGROUND FACTS

1. DEF, a Louisiana corporation, is the parent corporation of ABC TV and Stereo Rentals, Inc., Renter's Choice, and Renter's Choice Home Furnishings (DEF and its subsidiaries are collectively referred to herein as the "Defendants").

2. Colortyme, Inc. ("Colortyme") granted DEF exclusive franchise rights so that DEF, itself and/or through its wholly-owned subsidiaries, could do business in Minnesota using the trade name Colortyme. Sometime in 1990, Colortyme disenfranchised DEF and thereafter DEF, itself and/or through its wholly-owned subsidiaries, began doing business under the trade name "Renter's Choice."

3. Defendants are engaged in the "rent-to-own" business. As described by the Defendants:

Defendants are involved in the business of making available to the public various consumer goods through the use of rental

---

1. The prior Memorandum is incorporated herein by reference. However, the Court sets forth the following material facts in order to clarify the present posture of the instant motion as well as the factual basis for this Court's ruling.

agreements with [an] ownership option. Under these agreements, consumers pay a fixed rental rate for a specified term (usually by the week or month), with the contract being automatically renewed with each payment. After a specified number of payments have been made, the customer becomes the owner of the goods. At the end of each weekly or monthly renewal period, the customer can elect not to renew and the customer has no further obligations under the contract.

*See* Defendants' Informational Statement Form ¶ 3, Exhibit E, attached to Affidavit of Jay M. Quam.[2]

4. On April 4, 1992, Delilah Miller and Craig Stenzel (the "Plaintiffs") commenced a class action lawsuit in Hennepin County District Court against the Defendants and others. As amended, the multi-count complaint alleged, among other things, that DEF *and* its subsidiaries entered into rental purchase contracts with Minnesota customers, that those contracts constituted consumer credit sales, and that DEF and the other named defendants violated state and federal law in the course of negotiating and collecting payments under the contracts. As an independent cause of action, it was specifically alleged that the rent-to-own contracts were usurious, and therefore in violation of Minn. Stat. § 334.01, since the effective rate of interest collected and provided for under the contracts exceeded that which was allowable under state law. *See* Amended Complaint, Exhibit H. Accordingly, the Plaintiffs' prayer for relief included a request that the state court declare that the subject contracts were usurious and that the court enter judgment against the Defendants jointly and severally. *Id.* ¶ 7, at 17.

5. The Defendants answered the complaint collectively, generally denying the allegations of the complaint. The Defendants did, however, set forth a number of affirmative defenses which challenged *both* the factual and statutory basis for the Plaintiffs' usury claim.

6. The Plaintiffs propounded a series of interrogatories to the Defendants. On or about August 14, 1992, DEF and its subsidiaries collectively responded to the interrogatories. A number of interrogatories and their responses appear as follows:

*INTERROGATORY NO. 8:* Describe *all services you claim to have provided in connection with the contracts described in the Complaint.* State your estimate of the market value of each service you claim to have provided, and describe the method used by you to determine those values.

*ANSWER:* .... DEF states that a transaction involving its rental agreement with ownership option contracts offer prospective customers several benefits, including the repair and maintenance of the goods, delivery and pickup of the goods, the advantage of having the option to terminate the agreement at the end of any lease term, the availability of a consumer protection plan, the ability to enter a transaction without the extensive credit check or credit history commonly necessary to be able to enter transactions in other industries, and the availability of replacement goods. Due to the intangible nature of these benefits, DEF cannot assign an estimate for each specific item.

....

*INTERROGATORY NO. 11:* For each year commencing January 1, 1986, state:

a. *The number of contracts entered into by you with customers in Minnesota* in which the contract granted the customer the opportunity or option to purchase or otherwise become the owner [of] any property identified or described in the contract; and

b. The number of customers signing said contracts.

*RESPONSE:* .... DEF believes that the following approximations are transactions responsive to this interrogatory:

| | |
|------|------|
| 1987 | 4900 |
| 1988 | 5700 |
| 1989 | 6100 |
| 1990 | 6500 |
| 1991 | 5500 |

DEF reserves the right to supplement or revise this response to reflect a more extensive analysis of its records.

**2.** All of the Exhibits referenced to herein are attached to the Affidavit of Jay M. Quam.

*See* Defendants' Responses to Plaintiffs' First Set of Interrogatories, Exhibit C (emphasis added).

7. On or about August 3, 1992, the Plaintiffs filed a motion for partial summary judgment and sought a determination that the subject contracts were by operation of law consumer credit sales within the meaning of Minn.Stat. § 325G.15, rather than lease agreements, and therefore sales for all purposes under § 325G.16 in violation of the state's usury law. *See* Exhibit B. The Defendants filed a cross-motion for summary judgment on Plaintiffs' claim for usury, contending that the Plaintiffs could not, as a matter of law, satisfy all of the elements necessary to the establishment of a cause of action for usury.[3] *See* Exhibit C. In response, the Plaintiffs' specifically asserted that each and every element of its claim for usury as set forth in its complaint had been established as a matter of law.[4]

8. On November 24, 1992, the case was certified as a class action pursuant to Rule 23 of the Minnesota Rules of Civil Procedure.[5]

In analyzing whether class certification was appropriate, the state court concluded that

> all class members entered into substantially the same 'rent-to-own' agreement *created by the defendants*.... Miller and Stenzel both allege claims which parallel those of the proposed class members: *that they have signed contracts with defendants* which plaintiffs allege to be consumer credit sales and that they have been overcharged for their purchases.

Trial Court's Memorandum, Exhibit D, at 6–7 (emphasis added). The court designated two classes, each of which consisted of individuals who had entered into " 'rent to own' contracts in Minnesota with the Defendants...." Trial Court's Order for Class Certification, at 2, Exhibit D.

In connection with the memorandum opinion which designated the aforementioned classes, the trial court entered summary judgment in favor of the Plaintiffs and against the several Defendants. The court, in a detailed and thoughtfully analyzed opinion, made specific factual findings[6] and set

---

**3.** The trial court, citing the decision of *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641, 647–50 (Minn.1974), set forth the elements necessary to the establishment of a claim for usury under Minnesota law: (1) "A loan of money or forbearance of debt;" (2) "An agreement between the parties that the principal shall be repayable absolutely;" (3) "The execution or receipt of a greater amount of interest or profit than is allowed by law;" and (4) "The presence of an intention to collect interest at a rate greater than the law allows." *See* Court's Memorandum, Exhibit D, at 17. *Accord Farrell v. Wurm (In re Donnay)*, 184 B.R. 767, 778 (Bankr. D.Minn.1995). *See also* Defendants' Memorandum in Support of Motion for Partial Summary Judgment, Exhibit C. The Defendants, arguing in support of their motion for partial summary judgment, contended that "Summary judgment on the first two elements of usury is appropriate because both [elements] can be decided solely on the undisputed terms of the agreements between the parties." *Id.* at 3.

**4.** *See* Trial Court's Order, Exhibit D, at 2 (noting Plaintiffs' response to Defendants' motion for partial summary judgment requesting the grant of summary judgment on Plaintiffs' usury claim). *See also* Trial Court's Memorandum, Exhibit D, at 20–21 ("The court now turns to plaintiffs' contention, offered in response to defendants' motion, that the remaining ... elements [of usury] are satisfied as a matter of law and the

plaintiffs are therefore entitled to summary judgment on their usury claim. On a motion for summary judgment, the nonmoving party, as well as the moving party, may be the recipient of an order for summary judgment.").

**5.** In their Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Defendants argued that the Plaintiffs' case should not be certified as a class action because of an absence of common issues as to liability and damages. The defendants listed six factual determinations that would be unique to each of the class members' individual claims, none of which was the argument that each of the different defendants might be differently responsible to class members, depending upon various theories of liability.

**6.** The trial court's recitation of the facts which set forth the basis for its conclusions were, in part, as follows:

> Colortyme granted DEF franchise right to do business in Minnesota using the name Colortyme. In 1990, Colortyme disenfranchised DEF and, thereafter, *DEF and ABC TV began doing business in Minnesota* under the trade names Renter's Choice and Renter's Choice Home Furnishings.
>
> *Collectively, defendants have been engaged in the so-called rent-to-own business.*

Trial Court's Memorandum, at 3, Exhibit D (emphasis added).

forth conclusions of law.[7] In sum, the trial court ruled that the rent-to-own contracts were consumer sales contracts and violated Minnesota's usury laws. After thoroughly analyzing the state of the law as well as all of the arguments proffered by counsel, the trial court specifically concluded that: "There being no genuine question of fact barring entry of summary judgment in plaintiffs' favor on their usury claim, judgment shall be entered on that claim. . . ." Trial Court's Memorandum, at 23–24, Exhibit D.

9. Although the trial court's order might have otherwise been considered interlocutory in nature and subject to modification, see Minn.R.Civ.P. 54.02, the Defendants sought discretionary review in order to obtain an immediate review of the trial court's ruling and a final determination on the issue of the Defendants' "liability" under the usurious contracts.[8] See Minn.R.Civ.App.P. 105. See also Order of Minnesota Court of Appeals, Exhibit 6, at 2 (noting that at the request of the Defendants, "discretionary review . . . was extended [as] to the determination of liability."). On August 3, 1993, the Minnesota Court of Appeals reversed the determination of the trial court that the Defendants' contracts were usurious as a matter of law.[9] See Miller v. Colortyme, Inc., 504 N.W.2d 258 (Minn.Ct.App.1993). Upon further appellate review, the Minnesota Supreme Court reversed the decision of the Court of Appeals and thereby sustained in all respects the Trial Court's findings and conclusions.[10] See Miller v. Colortyme, Inc., 518 N.W.2d 544 (Minn.1994). In affirming the ruling of the trial court, the Minnesota Supreme Court indicated that: "The district court properly concluded that DEF charged an excessive

---

7. Before analyzing the applicable law against the standards for summary judgment, the trial court made the following prefatory statement: "Plaintiffs have moved for partial summary judgment asking that this court enter judgment declaring the defendants' contracts to be credit sales within the meaning of Minn.Stat. §§ 325G.15 & 325.16." Trial Court's Memorandum, at 12, Exhibit D (emphasis added).

8. On appeal to the Minnesota Court of Appeals, the Defendants set forth the following statement of the case and statement of facts:

Respondents Delilah Miller and Craig Stenzel, on behalf of themselves and others similarly situated, sued Appellants ABC TV and Stereo Rentals, Inc., Renter's Choice Home Furnishings, ABC Rental Systems, DEF Investments, Inc., and Renter's Choice (hereinafter collectively referred to as "Renter's Choice") in April of 1992. . . . Renter's Choice moved the trial court for summary judgment on Respondent's usury claim, arguing that Respondents could not, as a matter of law, establish two of four essential elements of a claim for usury. . . .

By Order dated November 30, 1992, the Honorable Bruce Hartigan of the Hennepin County District Court denied Renter's Choice's motion for summary judgment, and instead granted sua sponte summary judgment in favor of Respondents on all elements of their usury claim, reserving only the amount of damages. Judge Hartigan also granted Respondent's motion for summary judgment; holding that all of Renter's Choice's transaction were "sales for all purposes". . . .

Renter's Choice is one of several companies operating in Minnesota that rent nonessential consumer goods. . . .

Appellant's Brief to Minnesota Court of Appeals, at 3–4, Exhibit 9 (emphasis added).

9. The Minnesota Court of Appeals set forth the following facts which it believed to be material to the resolution of the issue before it:

Appellant D.E.F. Investments, Inc. and its subsidiaries operate four rent-to-own dealerships of new and used furniture and appliances in Minnesota. Under the appellants' contracts, customers elect to rent consumer items for a term. . . . On October 17, 1990, Craig Stenzel entered an agreement with appellants to rent-to-own a consumer item manufactured by Zenith.

Miller v. Colortyme, Inc., 504 N.W.2d 258, 259 (Minn.Ct.App.1993), rev'd, 518 N.W.2d 544 (Minn.1994).

10. In their Brief filed with the Minnesota Supreme Court, Defendants/Appellants described "DEF's" rent-to-own business as follows:

DEF operates a number of RTO dealerships of new and used furniture, appliances, and electronic goods, and does business in Minnesota under the trade name "Renter's Choice."

Exhibit P, at 9 (emphasis added). The Minnesota Supreme Court found the following facts essential to its determination:

Respondent D.E.F. Investments, Inc. and its subsidiaries operate several rent-to-own dealerships in Minnesota. They do business under the trade name "Renter's Choice Home Furnishings." DEF uses standard form contracts to lease new and used furniture, televisions, appliances, and various other consumer goods to customers.

Appellants Delilah Miller and Craig Stenzel both have entered into rent-to-own contracts with DEF over a period of several years.

Miller v. Colortyme, Inc., 518 N.W.2d 544, 546 (Minn.1994) (emphasis added).

amount of interest as a matter of law.... *Because no genuine issue of material fact exists as to whether DEF intentionally charged an excessive rate of interest,* the district court properly granted summary judgment for appellants on their usury claim." *Id.* at 550 (emphasis added). The case was subsequently remanded to the trial court in order to proceed with the issue of damages which were specifically reserved by the trial court. *See* Trial Court's Order and Memorandum, at 2, Exhibit D.

10. During the appellate process, DEF divested itself of a majority of its assets.

11. On or about December 21, 1994, the Plaintiffs filed a motion for partial summary judgment on the issue of damages. *See* Exhibit E. By their motion, the Plaintiffs sought, among other things, to establish the nature of the relief available to the Plaintiffs who comprised the two classes and the appropriate measure of damages. The Defendants opposed the Plaintiffs' motion.

12. On February 16, 1995, the trial court granted the Plaintiffs' motion for summary judgment with respect to the measure of damages. In its memorandum, the court indicated that:

> The two individually named Plaintiffs and the members of the classes they represent obtained consumer goods from Defendants pursuant to self-ascribed "rent-to-own" contracts.... This court has [previously] granted Plaintiffs' motion for partial summary judgment upon Class One's claim that its RTO contracts are usurious. Because that holding has been affirmed by the Minnesota Supreme Court ..., *the only issue which remains to be resolved vis-a-vis Class One's usury claim is the measure of damages to be awarded.*

Trial Court's Memorandum, at 4, Exhibit 5 (emphasis added). The court, addressing the applicable remedies available to the Plaintiffs who prevailed under their cause of action for usury and establishing a formula for calculating damages, held that: "As regards each of Class One's rent-to-own contracts *with Defendants,* the members of Class one may elect one of the following remedies for the *Defendants' usury violations...."* Trial

Court's Order, at 2, Exhibit 5 (emphasis added).

13. On April 30, 1995, the Plaintiffs in the state court class action filed an involuntary Chapter 7 bankruptcy petition against DEF under § 303 of the Bankruptcy Code.

14. On May 26, 1995, the involuntary Chapter 7 debtor, DEF, filed a motion for summary judgment seeking an order dismissing the involuntary bankruptcy petition. By its motion, DEF challenged the propriety of the involuntary filing. DEF, citing the 11 U.S.C. § 303(b)(1) requirement that petitioning creditors must be the holders of a claim against a debtor which is not contingent as to liability or subject to bona fide dispute, asserted that the Plaintiffs' claim against DEF is in bona fide dispute since the state court never ruled that *DEF* had any liability under the rent-to-own contracts. Among other things, DEF contended, *essentially for the very first time* in this ongoing and tortuous litigation between the parties which has spanned over a number of years, that the Plaintiffs ignored the distinction between DEF and its Minnesota subsidiaries and that the Plaintiffs "would need to pierce the corporate veil between DEF and these subsidiaries to have claims against DEF" since there was no privity of contract between the Plaintiffs and DEF.

15. On June 6, 1995, the Plaintiffs filed a cross-motion for summary judgment. The Plaintiffs asserted, among other things, that their claims against DEF were neither contingent nor subject to a bona fide dispute since the issue of DEF"s liability for usury had indeed been both adjudicated and conclusively established by the state courts. The Plaintiffs further contended that the determination of factual issues which gave rise to liability and the judgment of the trial court, as affirmed by the Minnesota Supreme Court, should be accorded preclusive effect under the doctrines of collateral estoppel and res judicata. Finally, the Plaintiffs objected to DEF"s attempt to escape the grasp of the state court judgment and its ramifications in this involuntary proceeding by raising, for the first time and in the final hour, the defenses of contractual privity and piercing

the corporate veil as a legal basis for disputing its liability.

16. The respective motions for summary judgment came on for hearing before this Court on June 7, 1995. During oral argument, counsel for DEF again asserted that in order to establish liability as to DEF, the Plaintiffs were required to show that either DEF was a party to the rent-to-own contracts or that DEF was responsible for the actions of its subsidiaries who were the actual parties to the contracts: "Those issues weren't presented. There was no evidence presented as to who was a party to these contracts or as to whether DEF would be liable under a 'piercing the corporate vail' [sic] type of argument...." *See* Transcript of June 7, 1995, Hearing, at 5. Accordingly, DEF essentially asserted that the issue of liability as to DEF hadn't been actually litigated or decided. The issue, according to DEF, remained open, thereby rendering the obligation of DEF subject to a bona fide dispute and precluding the application of collateral estoppel. *Id.* at 3–4. Counsel for DEF did not present evidence, argument, or even raise the issue of whether the state court judgment on the usury claim constituted a "final" judgment for purposes of collateral estoppel despite direct inquiry from the Court. *Id.* at 6–7.

17. By order entered on June 9, 1995, this Court denied DEF's motion for summary judgment, granted the Plaintiffs' cross-motion for summary judgment, and entered an order for relief. By memorandum order entered on June 15, 1995, the Court set forth the legal basis for its order. The Court concluded that the Plaintiffs' claims were not contingent as to liability or subject to a bona fide dispute. The Court addressed the arguments and those disputed issues as presented and shaped by counsel in their respective papers and at oral argument, and concluded, among other things, that the issue of DEF's liability had been actually litigated and determined by the state court. Accordingly, this Court concluded that the issue of liability had been conclusively determined and that DEF was precluded by the doctrine of collateral estoppel from challenging the issue in the bankruptcy proceeding.

18. On June 19, 1995, DEF filed a "Motion for Altered Judgment, For Relief From Judgment, or For Amended Findings and Conclusions" ("Motion") and filed a number of briefs in support thereof. DEF, by its Motion grounded on Rules 59(e) and 60(b)(1) of the Federal Rules of Civil Procedure, is seeking to have this Court vacate the order for relief, dismiss the involuntary petition, or amend the findings and conclusions made in connection with its June 15th memorandum order.

The matter came on for hearing on July 20, 1995. DEF asserts, for the first time after judgment had been entered, that this Court erred by according preclusive effect to the judgment of the state court since the state court partial summary judgment orders did not constitute a "final" judgment on the merits. DEF also reargues, among other things, the point it previously raised and this Court previously addressed in that the partial summary judgment orders of the state court neither addressed nor resolved the issue of DEF's individual liability to the Plaintiffs. Accordingly, DEF asserts that because its liability has not been actually litigated in the class action lawsuit, this Court erred by ruling that DEF was precluded from disputing its liability to the Plaintiffs and by entering the order for relief.

## DISCUSSION

### A. *Standards for Rules 59(e) and 60(b)*

 Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, which are made applicable to bankruptcy proceedings by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, permit the bankruptcy court to alter, amend, or vacate a judgment after its entry or, in limited circumstances, reconsider a substantive aspect of a previously rendered determination. *NationsBank v. Blier (In re Creative Goldsmiths)*, 178 B.R. 87, 90–91 (Bankr.D.Md. 1995). One of the primary purposes of such a motion is to permit the correction of any manifest errors of law or misapprehension of fact. *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993); *Lux v. Spotswood Constr. Loans*, 176 B.R. 416, 420 (E.D.Va.),

*aff'd,* 43 F.3d 1467 (4th Cir.1994). The Rules are simply *not* designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor are they aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced. *Bannister v. Armontrout,* 4 F.3d 1434, 1440 (8th Cir.1993); *Concordia College Corp. v. W.R. Grace,* 999 F.2d 326, 330 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); *Dale & Selby Superette & Deli v. Department of Agric.,* 838 F.Supp. 1346, 1348 (D.Minn.1993); *DeGidio v. Pung,* 125 F.R.D. 503, 505 (D.Minn.1989) (reasoning that a court need not make findings upon all disputed facts and that a motion to amend findings should not be used as a basis for relitigating issues upon which a party did not prevail). *See Federal Deposit Ins. Corp. v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992) (opining that motions under the rules which provide for the altering or amending of a judgment may not be used to argue a new legal theory which could have been advanced previously since they are not aimed at "initial consideration," but "reconsideration"). Attempts to take a "second bite at the apple" or pad the record for purposes of appeal (especially when new legal theories or issues are not previously argued, but subsequently come to the mind of the losing party) are thus beyond the intended scope of Rules 59 and 60. Therefore, when issues have been carefully analyzed and a judgment has been rendered, only a change in the law or the facts upon which the court's decision was based generally justify a reconsideration or amendment of a court's previous order. *Mannings v. School Bd.,* 149 F.R.D. 235, 235 (M.D.Fla.1993). Such motions are thus granted sparingly and properly viewed as an extraordinary remedy. *See id.; Dale & Selby Superette & Deli v. Department of Agric.,* 838 F.Supp. 1346, 1347–48 (D.Minn.1993). *See also Wilson v. Runyon,* 981 F.2d 987, 989 (8th Cir.1992) (holding that the relief afforded by Rule 60(b) is extraordinary), *cert. denied,* —— U.S. ——, 113 S.Ct. 2968, 125 L.Ed.2d 668 (1993).

Assuming, without deciding, that the new arguments raised by DEF and its reassertion of arguments addressed previously by this Court, that the present Motion is properly before the Court, which is seriously doubted, the Court will address the essential aspects of the issues raised and arguments advanced by DEF in its Motion.

### B. *Collateral Estoppel*

 The fundamental premise underlying the doctrine of collateral estoppel, or issue preclusion, in American jurisprudence is that once an issue has been determined in a prior proceeding by a court of competent jurisdiction, there is no further fact-finding function for a court to perform. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979). As noted nearly one hundred years ago by Justice Harlan:

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground for recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between the parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*Southern Pac. R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Thus, precluding parties from contesting issues of *law or fact* that they have

had a full and fair opportunity to litigate in a previous suit shields their adversaries "from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). When issue preclusion is invoked in federal court to bar the relitigation of *claims or issues* previously adjudicated by a state court, the doctrine also serves to "promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980).

 Federal courts have consistently applied the doctrine of collateral estoppel to issues and causes of action decided in state courts. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982). Indeed, federal courts have a statutory mandate to give the same preclusive effect to state court judgments that those judgments would be accorded in the courts of the state from which the judgments emanated. *See* 28 U.S.C. § 1738. *See also Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *North Tel, Inc. v. Brandl (In re Brandl),* 179 B.R. 620, 623–24 (Bankr.D.Minn.1995).

 Although set forth in a variety of ways by courts applying both Minnesota and federal law, the use of issue preclusion is appropriate when the party seeking its application establishes that: (1) the issue of law or fact sought to be precluded is identical to that which was involved in a prior adjudication; (2) the issue was actually decided on the merits in the first action by a valid and sufficiently final judgment after a full and fair opportunity to litigate; (3) the issue must have been actually litigated in the prior action by the parties or their privies; and (4) the resolution of the issue was necessary or essential to the disposition of the prior action. *See, e.g., Abbott Bank v. Armstrong,* 44 F.3d 665, 666 (8th Cir.1995); *Johnson v. Miera (In re Miera),* 926 F.2d 741, 743 (8th Cir.1991); *Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 356 (8th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985); *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *North Tel, Inc., v. Brandl (In re Brandl),* 179 B.R. 620, 624 (Bankr.D.Minn.1995) (citing authority from the Minnesota state courts); *In re Miller,* 153 B.R. 269, 273 (Bankr.D.Minn.1993); *Snydergeneral Corp. v. Gibson (In re Gibson),* 149 B.R. 562, 568 (Bankr.D.Minn.1993); *Ellis v. Minneapolis Commission on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982). It is significant to note, however, that although the perpetuation of clearly erroneous decisions is a consideration which may in certain circumstances shape the doctrine of collateral estoppel, *see Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 992 (5th Cir.), *reh'g denied,* 565 F.2d 1215 (1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.,* 356 N.W.2d 295, 299 (Minn.1984), the preclusive effect of a judgment on the merits will not be defeated by a showing that the former judgment was incorrect or that the previous court's reasoning or assessment of applicable legal principles was erroneous. *See In re Miller,* 153 B.R. 269, 273 n. 4 (Bankr.D.Minn.1993) (citing authority); *Hoofnagle v. Alden,* 170 Minn. 414, 419, 213 N.W. 53, 55 (1927). *See also* 1B James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.441[2] (2d ed. 1995). *See generally Baltimore v. Phillips,* 274 U.S. 316, 320, 323, 47 S.Ct. 600, 602, 603, 71 L.Ed. 1069 (1927) (concluding that the preclusive effect of a judgment is not diminished by the fact that both court and counsel proceeded upon an erroneous legal theory, since a party seeking to enforce or defend a legal or equitable claim must present to the court, either in its pleadings or otherwise, all of the grounds upon which relief is sought); *Collins v. City of Wichita,* 254 F.2d 837, 839 (10th Cir.1958) ("Litigation must end some time, and the fact that a court may have made a mistake in the law when entering judgment, or that there may have been a change in the court's view of the law after its entry, does not justify setting it aside.") (citing *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)).

The pivotal issues in this latest skirmish in the ongoing battle between DEF and the Plaintiffs in the class action lawsuit, who are now the petitioning creditors in the involuntary proceeding, are, as previously set forth, essentially two-fold. Despite the different twist put on the issues by DEF, each issue raised by DEF in its Motion and barrage of briefs is directed at attacking the requisite elements of collateral estoppel. First, DEF, for the first time, maintains that the order of the state court was not a "final" order for purposes of collateral estoppel. Second, DEF contends, once again, that the state court did not determine DEF's liability for violating the state's usury laws and therefore the issue of DEF's liability was never actually litigated or, for that matter, essential to court's judgment. This Court will examine each of DEF's essential arguments.

### 1. *Finality*

As previously set forth, a court's order or judgment does not have any preclusive effect on future litigation unless that order or judgment constitutes a final judgment or decision on the merits. For purposes of preclusion under the doctrine of collateral estoppel, the requirement of "finality" or a "final judgment" is often stated in broad general terms and loosely applied. Traditionally, "finality" has been identified and equated with "appealability" in the context of a particular case. However, the principle of finality or a final judgment in the collateral estoppel or res judicata sense of precluding further litigation of the same issue is *not* identical to the concept of a "final" order in the rules governing appellate jurisdiction. *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1962) (Friendly, J.) (opining that the term "final" has many nuances of meaning and that the law of judgments does not use it in relation to conclusiveness as the appellate rules do to mean only a judgment which puts an end to litigation and thereby leaves nothing for a court to do but execute a judgment), *cert. denied sub nom. Dawson v. Lummus*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Sherman v. Jacobson*, 247 F.Supp. 261, 268 (S.D.N.Y.1965); 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 4432 (1981); 46 Am. Jur.2d *Judgments* § 583 (1994).

Thus, the scope of the term "final judgment" is not in all cases confined to the final judgment in an action which disposes of the litigation in its entirety but, rather, includes any judicial decision upon a question of fact or law which is not provisional and subject to future change by the same tribunal. *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir.1964), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). For purposes of preclusion, therefore, a " 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 & cmt. b (1982). Whether a judgment, not "final" for purposes of prosecuting an appeal, ought to nevertheless constitute a final judgment for purposes of precluding additional litigation on the same issue "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Lummus Co.*, 297 F.2d at 89. *Accord Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995–96 (7th Cir.1979) (opining that an otherwise interlocutory order will nevertheless "be given preclusive effect if it is necessarily based upon a determination that constitutes an insuperable obstacle to the [party's] success on the merits"), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). *See, e.g., Zdanok*, 327 F.2d at 950, 955 (precluding the admission of additional evidence on the issue of liability in a subsequent action since there was nothing in the opinion of the prior court that lent support to the idea that the court considered itself dealing with an issue partially tried).

DEF points this Court to Rule 54.02 of the Minnesota Rules of Civil Procedure and essentially argues that since the state court directed the entry of judgments (on the issue of usury and for damages) on less than all of the claims in the multi-count class action lawsuit, and the state court did not make "an express determination that there is no just reason for delay" as required under the rule, that those judgments are, according

to the rule, "subject to revision at any time before the entry of judgment adjudicating all of the claims." *See* Minn.R.Civ.P. 54.02. DEF contends that since the judgments are subject to revision, the element of "finality" which is a necessary prerequisite to the invocation of collateral estoppel can not be satisfied. Such a position is simply, in this Court's view, not tenable in light of the procedural history of this case and the fact that the argument, as noted above, ignores the legal distinction which exists between a final judgment for purposes of preclusion and a final order or judgment for purposes of appeal.

■ One of the salutary purposes of Rule 54.02 is to provide litigants in a class action with the means of determining when an order or judgment is interlocutory in nature or sufficiently final for purposes of advancing an appeal. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 512, 70 S.Ct 322, 324, 94 L.Ed. 299 (1950). *See also United States v. Munsingwear, Inc.*, 340 U.S. 36, 38, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950) (indicating that a judgment in a prior suit may be binding in subsequent suits even though an available avenue of appeal has not been taken or the right thereto has not been perfected); *American Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn.Ct.App.1984). *See generally* Minn.R.Civ.App.P. 104.01 cmt.[11] However, Rule 54.02 simply can not

be used as a shield to prevent the application of collateral estoppel on the facts and history of this case where DEF petitioned and, more importantly, *actually obtained* discretionary review of the trial court's determination, the appeal of which was vigorously prosecuted to both the Minnesota Court of Appeals and the Minnesota Supreme Court. *See Roberts v. Flanagan*, 410 N.W.2d 884, 887–88 (Minn.Ct. App.1987); *Georgia–Pacific v. Gypsum George's C. & C.*, 346 N.W.2d 691, 692 (Minn. Ct.App.1984) (rejecting the virtually identical argument that DEF is advancing).[12] *Accord Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854–55 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). *See generally United States v. State*, 791 F.2d 1573, 1576 (8th Cir.1986) (intimating under Rule 54(b) of the Federal Rules that preclusion would have been available *had there been a judgment from which an actual appeal was taken*). Any avenue of modifying or revising the judgment adjudicating liability under the state's usury statutes was effectively foreclosed by the prosecution of the appeal to fruition in the Minnesota courts.

■ Similarly, this Court rejects the notion advanced by DEF that partial summary judgments can never constitute a sufficiently final judgment for purposes of collateral estoppel and, therefore, be accorded preclusive effect. With respect to the propriety of utilizing summary judgments in general to

---

11. The advisory comments to Rule 104.01 of the Minnesota Rules of Civil Appellate Procedure indicate that:

> A judgment disposing of less than all claims against all parties entered pursuant to an order which does not contain the express determinations and directions prescribed by Rule 54.02 is not appealable until entry of the final judgment disposing of all remaining claims of all parties.
>
> This limited right of appeal recognizes that the trial court's use of the language prescribed by Rule 54.02 is likely to be confined to two situations: (1) where early review of the applicability of a rule of law may obviate a retrial, or (2) where the party obtaining judgment should not be required to await the conclusion of the case as to other parties and issues before the time for appeal begins to run.

Minn.R.Civ.App.P. 104.01 cmt. *Cf.* Minn. R.Civ.P. 56.03.

12. In *Georgia–Pacific*, the Minnesota Court of Appeals concluded that:

> The trial judge ordered entry of the amended judgments, but never made an express determination that there was no just reason for delay of an appeal [pursuant to Rule 54.02]. Therefore, if the amended judgment was truly a partial summary judgment, it was interlocutory and not appealable.
>
> The Supreme Court, the trial court and the parties treated the judgment as a final judgment.... Georgia–Pacific never challenged the appealability of the judgment. It actively argued the issue in its briefs to the Minnesota Supreme court. Therefore, the Supreme Court's decision is res judicata on all matters in the case.

*Georgia–Pacific v. Gypsum George's C. & C.*, 346 N.W.2d 691, 692 (Minn.Ct.App.1984) (citation omitted).

serve as a basis for according determinations rendered therein conclusive, it has been said that: "It would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero.... Indeed, a more positive adjudication is hard to imagine." *Exhibitors Poster Exchange, Inc. v. National Screen Serv. Corp.,* 421 F.2d 1313, 1319 (5th Cir.), *reh'g denied,* 427 F.2d 710 (1970), *cert. denied,* 400 U.S. 991, 91 S.Ct. 454, 27 L.Ed.2d 439 (1971). *Accord Hubicki v. ACF Indus., Inc.,* 484 F.2d 519, 524 (3d Cir.1973). The same rationale applies with equal force to those partial summary judgments, like that in the case at bar, which are in all respects firm and not subject to subsequent modification when there has been a full and fair opportunity to litigate and actually obtain appellate review. *See Georgia–Pacific v. Gypsum George's C. & C.,* 346 N.W.2d 691, 692 (Minn.Ct.App.1984) (according preclusive effect to issues adjudicated by partial summary judgment). *See also First Jersey Nat'l Bank v. Brown (In re Brown),* 951 F.2d 564, 569 (3d Cir.1991); *Phillips v. Federal Deposit Ins. Corp. (In re Phillips),* 124 B.R. 712, 721 (Bankr.W.D.Tex.1991); *In re Falstaff Brewing Corp.,* 441 F.Supp. 62 (E.D.Mo.1977) (holding that an order granting partial summary judgment in a still-pending case "is, in the sense requisite for raising an estoppel, a final judgment on the merits.").

The authorities cited by DEF in support of its position which, according to DEF, stand for the proposition that partial summary judgments should not be accorded preclusive effect are distinguishable from the case at bar even if the Court could give those decisions the broad reading that DEF urges. A careful review of the decisions reveal that they either (1) do not address or consider the consequences of a partial summary judgment order which fully adjudicates the issue liability of the parties to a claim and upon which the losing parties had *actually* obtained full appellate review; or (2) do not consider the consequences of construing two partial summary judgment orders, which dispose of an entire claim, together. *Contra Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1269–71 (5th Cir.1986) (concluding that a partial summary judgment was not a final judgment for purposes of collateral estoppel; but not passing on the issue if the judgment had actually been subject to appellate review); *Golman v. Tesoro Drilling Corp.,* 700 F.2d 249, 253 (5th Cir.1983).

In sum, this Court concludes that the summary judgment order of the trial court as affirmed by the Minnesota Supreme Court is in all things immutable and not in any sense provisional. It is therefore sufficiently final to be accorded preclusive effect in this proceeding. Moreover, the correctness of the Court's conclusion becomes especially obvious if the aforementioned summary judgment order is construed in tandem or in conjunction with the summary judgment order which finally disposed of the claim in its entirety.

### 2. Actually Litigated

As previously outlined, collateral estoppel operates as to only those issues which have been actually litigated and can be said to be essential to the outcome of the prior judgment. *See Hauser v. Mealey,* 263 N.W.2d 803, 806, 808 (Minn.1978); *Burgmeier v. Bjur,* 533 N.W.2d 67, 70 (Minn.Ct.App. 1995). Therefore, the inquiry must always be as to the issue or question actually litigated and determined as a necessary part of the holding in the original action, not what might have been litigated and determined. It is only upon such matters that a prior judgment can be regarded as conclusive in a subsequent proceeding. Although "[u]sually 'an express finding in a valid final judgment is good enough' to meet this requirement," *In re Miller,* 153 B.R. 269, 274 (Bankr. D.Minn.1993) (quoting *Grip–Pak v. Illinois Tool Works,* 694 F.2d 466, 469 (7th Cir. 1982)), the Eighth Circuit has opined that a court should generally examine the entire record of the earlier proceeding in order to determine whether the issue sought to be precluded was actually litigated and essential to the decision in the prior case. *Johnson v. Miera (In re Miera),* 926 F.2d 741, 743 (8th Cir.1991). In ascertaining what issues were decided in a prior adjudication, courts may draw logical inferences from the prior proceeding; therefore, a court, in examining the record, may be required to decide whether a

rational finder of fact could have logically reached a decision on any issue other than that which is sought to be precluded. *United States v. Seijo*, 537 F.2d 694, 697 (2d Cir.1976), *cert. denied*, 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 394 (7th Cir.1986).

■ It is significant to note that the "actually litigated" requirement does not necessarily require that an issue be "thoroughly litigated." If the parties to the original action disputed the issue and the court resolved it, the doctrine of collateral estoppel is fully applicable no matter how slight the amount of evidence was on which a determination was rendered. *Continental Can Co., U.S.A. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979). Therefore, if an issue has been raised and determined in a prior action, it is binding in a subsequent proceeding notwithstanding the fact that a party may have omitted to argue or present evidence on matters which, if argued or presented, would have produced a contrary result. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C.Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1044, 122 L.Ed.2d 353, *reh'g denied*, —— U.S. ——, 113 S.Ct. 1436, 122 L.Ed.2d 802 (1993) (opining that the fact that evidence could have been presented on an issue in a prior suit, but was not, does not avoid the application of collateral estoppel); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 235 (6th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 310, 42 L.Ed.2d 270 (1974) (indicating that additional factual allegations not made in a prior suit did not permit their relitigation in a subsequent suit); *United States v. Silliman*, 167 F.2d 607, 613–20 (3d Cir.), *cert. denied*, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948) (concluding that if an issue is raised and decided against a party who fails to proffer a sufficient quantum of proof, the doctrine of collateral estoppel is binding just as if a "barrel" of evidence had actually been presented). *Cf. North Tel, Inc. v. Brandl (In re Brandl )*, 179 B.R. 620, 626 (Bankr. D.Minn.1995) ("This precedent is binding on this court, and its import is clear: though the Defendant did not interpose a defense in the [state court] action, he had a 'full and fair opportunity' to do so. As contemplated by [Minnesota decisions], he is now bound by all of the findings that must be deemed to have been made by the state court. Those findings, in turn, encompass all of the fact allegations pleaded there by the Plaintiff.") (footnotes omitted); "Any other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or inadvertence, by denoting as irrelevant an issue" that was either raised or not in contention and then refraining from introducing evidence or argument on the issue. *Marshall*, 603 F.2d at 596.

■ A cause of action consists of a common nucleus of operative facts giving rise to a remedy which establishes the respective rights and obligations of the parties to the suit. Those facts are shaped by the parties themselves in a number of ways including: the pleadings, admissions, responses to interrogatories, motions for summary judgment, briefs, and argument. A judgment is therefore the result of the application of legal principles to a set of material facts as presented by the parties to the court for consideration. It is black-letter law that a party in whose favor summary judgment is rendered bears the burden of establishing that there are no disputed material facts and that it is entitled to the remedy prayed for. The party opposing summary judgment is entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts and issues as presented by the parties in their pleadings, evidence, or otherwise. Thus, it is well settled that a summary judgment is not warranted *unless* a party is entitled to a judgment on its claim as a matter of law upon facts that are not genuinely disputed. If there is a factual basis upon which to oppose the motion for summary judgment, the nonmoving party is required to set those facts forward or bring them to the attention of the court and may not merely rely on the general denials contained in its pleadings. A defeated litigant can not, in hindsight, set aside a judgment because of a failure to present on a motion for summary judgment a defense or all of the facts known that might have been useful to the court in rendering its determination. *See School Dist. v. ACandS, Inc.*, 5 F.3d 1255 (9th Cir. 1993), *cert. de-*

*nied,* —— U.S. ——, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994); *United States v. Real Property and Residence,* 920 F.2d 788, 792 (11th Cir.1991); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Mamakos,* 509 F.2d 1217, 1219 (9th Cir.1975); *Bershad v. McDonough,* 469 F.2d 1333, 1336 (7th Cir.1992); *Hoffman v. Celebrezze,* 405 F.2d 833, 835 (8th Cir.1969). *Cf. Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 320, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); *Miller v. Bittner,* 985 F.2d 935, 940 (8th Cir.1993). Similarly, there is no reason to presume that the parties will not vigorously present their case on all disputed issues necessary to the resolution of a claim. In that regard, a decree from a court of competent jurisdiction must be construed with reference to the issues intended to be decided in light of the record as a whole. These principles are elementary.

■ This Court has thoroughly examined the entire record of the prior state court proceeding as it has been presented and set forth the material portions thereof above. In this case, the issue of the respective defendants' *liability* to the class action Plaintiffs under Minnesota law upon their claim for usury was clearly *the* very point or question actually and directly at issue in the prior suit and litigated by the parties. It was anything but incidentally or collaterally decided. To the contrary, the issue of the parties' liability was indeed absolutely essential to the resolution of the claim and to the state court judgments which declare in plain and unambiguous language the rights and responsibilities of the parties to the underlying controversy with respect to the usury claim. *See Abbott Bank v. Armstrong,* 44 F.3d 665, 666–67 (8th Cir.1995); *Moodie–Yannotti v. Swan (In re Swan),* 156 B.R. 618, 625 (Bankr. D.Minn.1993).

■ A fundamental prerequisite to the establishment of a claim and liability for usury under Minnesota law is "an agreement between the parties." *See supra* note 3. At no time did DEF, who advanced a cross-motion for summary judgment arguing that there was no genuine issue of material fact with respect to this issue, assert that *it* was not a party to the rent-to-own contracts or that a legal distinction existed between it and its subsidiaries for purposes of the establishment of a prima facie case for usury. The trial court, in a very thoughtful analysis, made specific findings of fact and expressly concluded from the evidence presented that *DEF and its subsidiaries* were engaged in the rent-to-own business in Minnesota, had entered into agreements with members of the class of plaintiffs, and charged a usurious rate of interest. These findings were absolutely critical to the claim for usury and were also set forth in the decisions of the Minnesota Court of Appeals and affirmed by the Minnesota Supreme Court. Indeed, it was, until relatively recently, the very position that DEF took during the entire course of the litigation.

The record is replete with findings that the issue of "liability" for usury was actually in dispute, litigated, essential to the judgment, and determined. Perhaps the most salient reference in the record pointing to the conclusion that the issue of liability was actually litigated and determined by the trial court is the express finding in the order establishing the appropriate formula for determining the amount of monetary damages: "[T]he *only issue* which remains to be resolved vis-a-vis [the Plaintiffs'] usury claim is the measure of damages awarded." *See* ¶ 12, *supra* (emphasis added). It would be impossible to even reach the issue of damages had the overarching and threshold issue of liability not been actually adjudicated and determined in the first instance. *See generally Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.) (claims arising out of the same nucleus of operative fact are to be given preclusive effect), *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990).

DEF essentially argues that an absence of a specific finding in the record which specifically allocates liability or responsibility among the respective parties to the class action suit by name, means that liability was not determined with respect to *any* party and that the state court was merely deciding an isolated issue in the case. This position defies logic and is inconsistent with the state of the record. While it is certainly true that the state court did not distinguish among the several defendants for purposes of determin-

ing liability for usury, it had no reason to do so in light of its findings of fact and since the prayer for relief included a request for the imposition of joint and several liability among the several defendants. DEF's construction of the state court's order would render the court's opinion in the case merely advisory and its holding wholly inapplicable to *any* particular defendant. Such a construction would effectively render the court's holdings in both of its orders nugatory and without effect.

DEF had a full and fair opportunity to procedurally, substantively, and evidentially litigate the issue of its liability in the first action. It simply can not seek to have this Court redetermine an issue that was previously adjudicated and resolved by now, for the very first time, advancing a new legal theory or defense that is the very antithesis of the position it previously assumed and firmly adhered to during the entire course of the state court proceedings. Any conclusion to the contrary, would essentially eviscerate the judgment of the state court, ignore comity and the appellate process, and undermine the policies which lie at the very core of the doctrine of collateral estoppel. The proper administration of justice is best served by limiting parties to one fair adjudication of a cause of action. Controversies thus once decided on the merits remain in repose. Otherwise, as this case amply demonstrates, the litigation would be endless.

Accordingly, and for reasons stated, the "Motion for Altered Judgment, For Relief From Judgment, or For Amended Findings and Conclusions" filed by DEF Investments, Inc. is in all things **DENIED**.

**SO ORDERED.**