Alan P. VERNON, Ted H. Vernon and Melinda B. Vernon as personal representatives of the Estate of Harold Vernon, Harvey Lurie and Emily Vernon, Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of FREEDOM SAVINGS AND LOAN ASSOCIATION, as the manager of the FSLIC Resolution Fund, Defendant–Appellee.

Freedom Savings & Loan Association, et al., Defendants.

No. 89–6284.

United States Court of Appeals, Eleventh Circuit.

Jan. 29, 1993.

---

Ira C. Hatch, Jr., Fort Lauderdale, FL, for plaintiffs-appellants.

E. Robert Meek, Jacksonville, FL, Robert D. McGillicuddy, F.D.I.C., Dennis S. Klein, Hughes Hubbard & Reed, Washington, DC, for defendant–appellee.

Before FAY, DUBINA and CARNES, Circuit Judges.

FAY, Circuit Judge:

This is a companion case to *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101 (11th Cir.1990) (hereinafter *Vernon I*) and involves claims against the Federal Savings and Loan Corporation (FSLIC) that were pending in the district court when *Vernon I* was decided. Appellants, the personal representatives of the Estate of Harold Vernon and his widow, are shareholders of a defunct savings and loan association, Old Freedom. They allege Old Freedom fraudulently induced them into purchasing stock in Old Freedom by not disclosing the institution's true financial condition, and they request damages for violation of securities and RICO laws, common law fraud, and misrepresentation. Appellants brought suit against the FDIC alleging that the FDIC as receiver and successor in interest to Old Freedom was liable to appellants for Old Freedom's actions, and that the FDIC in its corporate capacity violated 12 U.S.C. § 1729(b)(1)(B). The district court granted the FDIC's motion for summary judgment, holding that the *D'Oench* doctrine and its progeny barred appellants from bringing suit against the FDIC in either capacity. Because the law of *Vernon I* is binding authority in this case, we REVERSE the judgment of the district court and RE-MAND for proceedings consistent with this opinion and *Vernon I*.

## I. BACKGROUND

Only the facts and procedure necessary to this appeal are presented here. A detailed factual explanation may be found in *Vernon I*, 907 F.2d at 1103–04.

Harold Vernon purchased, individually and through an individual retirement account, 36,000 shares of preferred stock and 54,000 warrants to purchase common stock of Old Freedom on February 24, 1986. Seven months later Mr. Vernon died. The appellants are his widow and the personal representatives of his estate.

After Mr. Vernon's death, Old Freedom was declared insolvent and the FDIC was appointed and confirmed as receiver for the institution on July 23, 1987. On the same day, rather than liquidate Old Freedom,[1] the FDIC chose to enter into an acquisition agreement with New Freedom. Under the terms of the agreement, New Freedom assumed substantially all of the assets and liabilities of Old Freedom. New Freedom, however, expressly did not assume " 'any obligation of [Old Freedom] to its stockholders for or in connection with their stock holdings.' " *Id.* at 1109 (quoting language from the acquisition agreement).

The appellants brought suit against several parties, including Old Freedom, New Freedom,[2] and the FDIC in its corporate and receivership capacity, alleging violations of federal and Florida securities laws, federal and state RICO acts, and causes of action for common law fraud and misrepresentation. The appellants complained that Old Freedom and certain other defendants (who are not before this court) failed to disclose the true financial condition of Old Freedom; that Old Freedom was in fact insolvent when Harold Vernon purchased the stock and the stock warrants; and that the securities sold to him were worthless. Appellants alleged that the FDIC was liable for Old Freedom's actions as its successor in interest and for violating 12 U.S.C. § 1729(b)(1)(B) by failing to pay the valid credit obligation of Old Freedom to the appellants.[3]

The FDIC moved the district court for summary judgment in both its corporate and receivership capacity, arguing that based on the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny, the FDIC as receiver did not assume or acquire liability for the appellants' claims against Old Freedom. Therefore, as the argument went, because the FDIC as receiver could not and did not act beyond the scope of its authority in transferring Old Freedom's assets to New Freedom, neither was the FDIC in its corporate capacity liable to the appellants. The district court determined as a matter of law and without factual findings that the *D'Oench* doctrine did bar appellants' claims. Without benefit of the opinion in *Vernon I*, the district court entered an order on October 12, 1989 granting summary judgment for the FDIC, from which appellants now appeal.

## II. STANDARD OF REVIEW

A grant of summary judgment is subject to de novo review on appeal. *Carriers Container Council v. Mobile S.S. Assoc.*, 896 F.2d 1330, 1337, *modified*, 904 F.2d 28 (11th Cir.1990). The facts as developed in

---

**1.** When a federal savings and loan association is in default, the FDIC retains broad authority to, among other things, liquidate the assets of the institution or organize a new association to take over the assets. 12 U.S.C. § 1729(b)(1)(A) (1988). In any case the FDIC must pay all valid credit obligations of the defunct association. 12 U.S.C. § 1729(b)(1)(B) (1988).

**2.** The appellants' claims against New Freedom, as successor in interest to the FDIC, were resolved in *Vernon I.* We now consider only the claims remaining against the FDIC.

**3.** The Federal Deposit Insurance Corporation (FDIC), in its capacity as receiver for Old Freedom and as manager of the FSLIC Resolution Fund, was substituted as defendant in this action following the decision of Congress to abolish FSLIC in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 401 *et seq.*, 103 Stat. 183, 354–63 (codified in 12 U.S.C. § 1437, note § 401(f)(2) (Supp. I 1989)). Section 407 of the Act repealed 12 U.S.C. § 1729, but claims against the FSLIC were preserved in 12 U.S.C. § 1437, note § 401(f)(1).

the district court do not conflict.[4] The only issue is whether the *D'Oench* doctrine bars the appellants' claims against the FDIC as a matter of law.[5] FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 250, 106 S.Ct. 2505, 2510, 2511, 91 L.Ed.2d 202 (1986). We hold under the binding authority of *Vernon I* that appellants' claims are not barred.

## III. DISCUSSION

■ In *Vernon I* this court held the *D'Oench* doctrine inapplicable to the appellants' tort claims against New Freedom.[6] 907 F.2d at 1108. As a successor in interest to the FDIC, New Freedom argued for an extension of *D'Oench* to protect all assets acquired by a federal insurer or its successor in interest from all claims tending to diminish those assets, except those claims clearly supported by the records of the insolvent bank. *Id.* The court declined to adopt such a rule because it would bar valid tort claims that might not appear in the books of a failed bank, and would fly in the face of the FDIC's statutory duty to

" 'settle, compromise, or release claims in favor of or against [Old Freedom]' " and to " 'pay all valid credit obligations of [Old Freedom].' " *Id.* (quoting 12 U.S.C. § 1729(b)(1)(B)).

■ The rationale of *Vernon I* is easily extended to this case and we reiterate the court's finding there: "In every *D'Oench* doctrine case, save one,[7] the FDIC, the FSLIC, or some successor in interest asserted *or* defended the validity and enforceability of a particular debt or monetary obligation owed to the failed bank...." *Id.* at 1107. Appellants' tort claims are the same as those in *Vernon I*, only now the defendant/appellee is the FDIC. As previously mentioned, there are no facts on the record connecting the loans made to Mr. Vernon's entities with the securities that Mr. Vernon purchased. Moreover, the FDIC no longer holds any interest in the loans or personal guarantees of Mr. Vernon since these assets have been acquired by New Freedom. We simply do not think the *D'Oench* doctrine operates to bar free standing tort claims that are not

4. The FDIC urges this court to notice the judicial records of related proceedings in the Florida courts, which purportedly demonstrate that Harold Vernon personally guaranteed $20 million borrowed from Old Freedom by various entities affiliated with Mr. Vernon. The loans, now in default, were allegedly funded shortly before Mr. Vernon purchased the Old Freedom securities. This issue was not presented to the district court and we will not consider such when first raised on appeal. *Baumann v. Savers Federal Sav. & Loan Assoc.*, 934 F.2d 1506, 1512 (11th Cir.1991). It may or may not be appropriate to raise in the proceedings to follow.

5. Appellees alternatively argue for the first time that the appellants' claims are barred as a matter of federal common law by the absolute priority rule. There are exceptions to the general rule that this court does not address an issue not decided by the district court. *Baumann*, 934 F.2d at 1512. Any decision on whether the absolute priority rule bars appellants' claims is necessarily intertwined with facts not found in the record. This case, therefore, does not raise a pure question of law so it does not fall within the first exception to the general rule, and none of the other exceptions cited in *Baumann* apply. *Id.* We reverse without prejudice, leaving the FDIC free to argue this or any other point before the district court on remand.

6. The FDIC incorrectly characterizes this portion of the decision as dicta. The issue of whether the appellants' claims were barred by the *D'Oench* doctrine was squarely presented to the district court, which ruled that the claims were barred. Thus, we had to review the issue as ruled upon by the district court before reaching our conclusion to affirm summary judgment on other grounds.

The FDIC also suggested at oral argument that we should reconsider the ruling in *Vernon I*. This panel is not at liberty to overrule or reconsider a prior panel's decision. *United States v. Kopituk*, 690 F.2d 1289, 1308 (11th Cir.1982). Assuming sufficient grounds, the proper course of action would have been for the FDIC to file a petition for rehearing by the original panel or a suggestion for rehearing en banc.

7. *Belsky v. First Nat'l Life Ins. Co.*, 653 F.Supp. 80 (D.Neb.1986), *aff'd*, 818 F.2d 661 (8th Cir. 1987). Research shows one additional case decided after *Vernon I*, where the FDIC's claim was predicated upon a banker's blanket bond rather than a specific debt, the court refused to apply the statutory *D'Oench* doctrine and permitted Aetna to defend against the FDIC on the grounds of fraud in the inducement. *See FDIC v. Aetna Cas. and Sur. Co.*, 947 F.2d 196, 198, 205, 208 (6th Cir.1991).

related to a specific asset acquired by the FDIC.[8]

 On the authority of the *D'Oench* case, the FDIC argued to the district court that it did not assume all of the liabilities of Old Freedom by virtue of its appointment as receiver. We disagree. When the FDIC is appointed receiver, it steps into the shoes of the failed institution and takes possession of both the assets and the liabilities. *Id.* at 1108; *Trigo v. FDIC,* 847 F.2d 1499, 1502 (11th Cir.1988). See also 12 U.S.C. § 1821(d)(2)(A)(i) and (B)(i) (Supp. III 1991) giving the FDIC as successor in interest authority to operate and conduct all business of the failed institution, and 12 U.S.C. § 1729(b)(1)(A) and (B) (1988) giving the FDIC as receiver broad authority to operate, merge, liquidate, or organize a new association to assume the assets of the failed association, or to make any such other disposition as the FDIC deems appropriate. The FDIC transferred all the liabilities of Old Freedom to New Freedom via the acquisition agreement, except the obligations to Old Freedom stockholders regarding their stock. *Vernon I,* 907 F.2d at 1108–09. Thus, we hold the FDIC remains liable for any wrongdoings of Old Freedom not transferred to New Freedom, such as those claims which the appellants now present.

For the foregoing reasons, we RE-VERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

---

**8.** We acknowledge there are courts that disagree with our limitation of the doctrine and perhaps the Supreme Court or Congress will shed light on the intended scope of the *D'Oench* decision in the near future. *See Bowen v. FDIC,* 915 F.2d 1013, 1016 (5th Cir.1990) (an alleged unwritten side agreement need not implicate a specific obligation held by the FDIC); *Timberland Design v. First Service Bank for Sav.,* 932 F.2d 46, 50 & n. 4 (1st Cir.1991) (rejecting the analysis in *Astrup v. Midwest Fed. Sav. Bank,* 886 F.2d 1057, 1059 (8th Cir.1989) that *D'Oench* affords no protection against tort claims); *First State Bank v. City and County Bank,* 872 F.2d 707, 716–17 (6th Cir.1989) (refusing to limit the *D'Oench* rule to situations involving the collection of assets and holding the *D'Oench* doctrine to preclude the enforcement of an oral agreement which impacts on the failed institution's liabilities).