ABBOTT BANK, Hemingford, formerly
known as Bank of Hemingford,
Appellant,

v.

David N. ARMSTRONG; Hannah
Armstrong, Appellees.

No. 93–3185.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1994.

Decided Jan. 9, 1995.

Douglas Quinn, Omaha, NE, argued (J. Scott Paul, on the brief), for appellant.

Michael G. Helms, Phoenix, AZ, argued, for appellees.

Before MAGILL, Circuit Judge,
HEANEY and JOHN R. GIBSON, Senior
Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

After having untied one Gordian knot in the Hannah and David Armstrong bankruptcy, *see The Abbott Bank–Hemingford v. Armstrong,* 931 F.2d 1233 (8th Cir.1991) (*Armstrong I*), the Armstrongs now call upon us to vitiate our earlier holding. In *Armstrong I,* we upheld a judgment that the Armstrongs had transferred assets with intent to hinder, delay or defraud a creditor, namely Abbott Bank.[1] We therefore affirmed the bankruptcy court's denial of a bankruptcy discharge. After the Armstrongs litigated and lost the discharge issue, they asserted that the Bank's million dollar claim was extinguished by failure to give proper notice of the sale of $950 of hay and some farm equipment. The bankruptcy court ruled in favor of the Armstrongs, and the district court affirmed. We conclude that this later ruling is barred by the collateral estoppel springing from our decision in *Armstrong I,* affirming the orders then before us. Accordingly, we reverse.

The Armstrongs filed for Chapter 11 protection on December 31, 1986, and later voluntarily converted to Chapter 7. Abbott Bank filed its proof of claim on January 27, 1987, for $810,396.37 plus interest.

---

1. Formerly known as the Bank of Hemingford.

The Bank held a lien on the Armstrongs' crops and equipment. In January 1988 the Bank sold some grass hay belonging to the Armstrongs' estate for $950. The parties dispute whether the Bank gave the Armstrongs proper notice of the sale. For purposes of this opinion, we assume it did not.

Another creditor, the Federal Land Bank, also held a lien on irrigation equipment owned by the Armstrongs and encumbered by Abbott Bank's equipment lien. In February 1988 the bankruptcy trustee, at the request of the Federal Land Bank, agreed to sell certain real estate encumbered by Federal Land Bank liens, and at the same time, to sell the equipment. The two banks agreed to allocate $42,000 of the total sale proceeds to the equipment, to be shared between Abbott Bank and the Federal Land Bank. Again, we assume for purposes of this opinion that the trustee failed to give proper notice, and that the failure can be imputed to Abbott Bank.

In 1989 the Bank obtained a ruling from the bankruptcy court denying the Armstrongs a bankruptcy discharge. The elements of 11 U.S.C. § 727(a)(2)(A) (1988), under which the Bank proceeded, require that the debtors act "with intent to hinder, delay, or defraud a creditor or an officer of the estate." The Armstrongs appealed to the district court, and then to us. In a separate proceeding, the Bank moved to disallow certain of the Armstrongs' exemptions as resulting from fraudulent transfers under 11 U.S.C. § 522 (1988) (amended in 1990). The bankruptcy court denied the Bank's motion and the district court affirmed the exemption order. We affirmed both district court orders in the same decision in 1991. *Armstrong I*, 931 F.2d at 1238–39. The denial of discharge is predicated on a holding that the Armstrongs defrauded a creditor and that the Bank was that creditor: "The efforts [of David Armstrong and his father] were clearly directed toward protecting each other's positions to the detriment of the Bank...." *Id.* at 1239.

In June 1990, after losing the discharge case in the district court, the Armstrongs first filed an objection to the Bank's claim, arguing that the Bank's claim was barred because the Bank had not given the Armstrongs proper notice of the hay and equipment sales and because the Bank had received avoidable preferences before and during the bankruptcy. The Bank moved for summary judgment, arguing (inter alia) that its status as creditor had been decided in the discharge litigation.

The bankruptcy court denied the Bank's motion for summary judgment on the Armstrongs' objection to claim, *In re Armstrong*, No. BK 86–3714 (Bankr.D.Neb. May 7, 1991), and later denied a motion to reconsider. The bankruptcy court held that the issue of whether the Bank was a creditor was not actually litigated in the denial of discharge litigation (because it was established by admission in the pleadings). The bankruptcy court held that because of the lack of proper notice of the sales of the hay and the farm equipment, Nebraska law required that the claim be denied. The bankruptcy court's development of these and a number of other issues are not material to the issue we conclude to be dispositive. The district court affirmed. *Abbott Bank v. Armstrong*, No. 7:CV 92–5005 (D.Neb. July 19, 1993). The Bank appeals.

■ Collateral estoppel makes a determination from one proceeding binding in another proceeding if: (1) the issue to be precluded is the same as that involved in the prior litigation; (2) the issue was actually litigated in the prior litigation; (3) the issue was determined by a valid, final judgment; and (4) the determination was essential to the earlier judgment. *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983) (citation omitted).

■ The denial of discharge statute requires that the Armstrongs' efforts to hinder, delay or defraud have as their victim "a creditor or an officer of the estate." 11 U.S.C. 727(a)(2). As the bank was not an officer of the estate, status as a creditor was by statute necessary to give it standing to seek denial of the Armstrongs' discharge. Holding that the bank was a creditor was necessary to our judgment, which affirmed the judgments entered on the same issue by the district court and the bankruptcy court. 931 F.2d at 1238–39. The issue was inherent

in the first litigation, and essential to the valid final judgment that was entered. This critical, central issue in our earlier opinion—that the Bank was a creditor—was admitted in the Armstrongs' initial pleading. Under the facts of this case, the requirements of *Lovell v. Mixon* are satisfied.

The Armstrongs cite *United States v. Young*, 804 F.2d 116 (8th Cir.1986), *cert. denied*, 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987), arguing that collateral estoppel cannot apply because the "creditor" issue was not judicially resolved, but rather admitted in their answer. *Young* is distinguishable. There, the defendant was accused of failing to report income from his bail bonding business on his corporate income tax returns. *Id.* at 117. In earlier litigation, Young filed a motion under Rule 41(e) of the Federal Rules of Criminal Procedure attacking a search warrant under which the government had seized records of his bonding business. *Id.* In his brief in the warrant proceedings Young had characterized his bonding business as personal, rather than corporate, and, in his earlier appeal, the court had adopted his language. In the later case we held that the court's statement that the business was personal was not a binding finding of fact because it was not necessary to the decision in the case attacking the search warrant. *Id.* at 117–18 ("[L]itigation ... of the corporate versus personal status of Young's bail bonding business would have resulted only in a technical change in the way Young identified himself in his motion.") Here, by contrast, the heart of the controversy in *Armstrong I* was whether the Armstrongs had acted with intent to hinder, delay or defraud a creditor, and our holding rests on the conclusion that creditor status was established. The Armstrongs would now have us re-examine the core of our earlier holding, a result not required by *Young* or by any reasonable application of *Young*.[2]

We consider the timing of the Armstrongs' objection to be significant. A preliminary

pretrial statement filed by both parties in August 1988 in the denial of discharge action made no mention of the lack of notice of the sales of the hay or machinery. The record shows that the Armstrongs were aware of the sales at that time. The bankruptcy court issued its decision denying discharge March 1, 1989, and identified the bank as the main operating lender of the Armstrongs. The district court entered its order affirming the bankruptcy court's denial of discharge on November 27, 1989. The Armstrongs filed their objection to the claim raising the improper notice of the two sales on June 18, 1990, after the district court had issued orders denying discharge. Collateral estoppel is thus most appropriate in this case, where the Armstrongs made no effort to raise an issue that could have had a material bearing on whether the bank was a creditor entitled to an order denying discharge.

We therefore refuse to accede to the Armstrongs' eleventh-hour attempt to re-try an issue that was a foundation of our decision in *Armstrong I*.[3] We reverse the judgment of the district court.

---

**2.** The Armstrongs argue that they owed the Bank money lent for operating expenses during the bankruptcy, and that this would have made the Bank a "creditor" regardless of whether the other debt was discharged. This argument is meritless, since the record indicates the operating loan was paid off before the discharge litigation was decided.

**3.** The Armstrongs' argument that the Bank's claim should be barred on account of preferences is subject to the same collateral estoppel analysis.