**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-4267

_____

Phillip Kelly, Trustee,                          *
                                                 *
    Plaintiff/Appellant,                         *
                                                 *
    v.                                           *
                                                 *
David Armstrong, Hannah Armstrong,               *
                                                 *
    Defendants/Appellees,                        *
                                                 *
Theodore F. Armstrong,                           *
                                                 *
    Defendant,                                   *
                                                 *  Appeal from the United States
Omaha State Bank,                                *  District Court for the District
                                                 *  of Nebraska.
    Defendant/Appellee,                          *
                                                 *
Lynn Terry, Special Administrator for                                    *
the Estate of Theodore F. Armstrong,   *
deceased, David Armstrong, Special     *
Administrator for the Estate of        *
Theodore F. Armstrong, deceased,       *
                                                 *
    Appellees.                                   *

_____

Submitted: September 11, 1997
     Filed:    April 1, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, and BEAM, Circuit
     Judges.
_____

BEAM, Circuit Judge.

Phillip Kelly, trustee of David and Hannah Armstrong's bankruptcy estate, brought this action under 11 U.S.C. § 548(a), alleging both actual and constructive fraud and seeking to set aside four pre-bankruptcy transfers:  (1) the sale of David's stock in a family ranching corporation to his father, Theodore; (2) the sale of the Armstrongs' home to Theodore; (3) David's pledge of stock as collateral on loans issued by Omaha State Bank; and (4) David and Hannah's pledge of several vehicles as additional collateral on the loans.  A jury returned a verdict against Kelly on all four claims.  The district court denied his motions for a new trial and for judgment as a matter of law, and Kelly appeals.  We affirm in part, reverse in part, and remand for a new trial.

## I.    BACKGROUND

This eleven-year-old case comes to us with a long and complex history.  See Abbott Bank-Hemingford v. Armstrong, 931 F.2d 1233 (8th Cir. 1991) (Armstrong I); Abbott Bank-Hemingford v. Armstrong, 44 F.3d 665 (8th Cir. 1995) (Armstrong II).  The facts giving rise to the Armstrong bankruptcy saga are fully recited in our opinion in Armstrong I.  Here, we offer only those facts directly relevant to the instant appeal.

In October of 1986, shortly before declaring bankruptcy, David and Hannah Armstrong transferred property in a circumspect series of transactions.  First, David transferred 1800 shares and the majority interest in Maverick Land and Cattle Company (Maverick), a closely held corporation in which he and his father, Theodore, were the sole shareholders, to Theodore for $79,920.  Next, in exchange for a pledge by Theodore of over $600,000 worth of securities, Omaha State Bank increased

Maverick's credit line from $200,000 to $600,000. Maverick borrowed against the new credit line to repay Theodore $157,700, in partial satisfaction of an outstanding debt. Soon thereafter, Theodore purchased David and Hannah's residence for that exact amount.

David then pledged his remaining shares of Maverick to Omaha State Bank as additional security on the credit extension. David and Hannah also pledged several of their vehicles to secure the loan, although Omaha State Bank neither required nor requested that they do so. Finally, with the proceeds from the sale of their house, David and Hannah purchased annuities that were exempt from execution under Nebraska law.[1] See Neb. Rev. Stat. § 44-371 (Reissue 1984).

David and Hannah Armstrong filed their bankruptcy petition on December 31, 1986. As a result of the foregoing transactions, virtually all of their assets were encumbered to the benefit of Omaha State Bank and to the detriment of all other creditors. The Chairman of the Board of Omaha State Bank, Marvin Schmid, was a personal friend of Theodore's, and Schmid's former law partner has represented Theodore,[2] David, and Hannah throughout these proceedings.

One of the disadvantaged creditors, the Abbott Bank-Hemingford, formerly known as the Bank of Hemingford, (Bank) asked the bankruptcy court to disallow the exemption for the annuities on the grounds that the Armstrongs had acquired them in a fraudulent transaction. The court denied the Bank's motion, because it found no "extrinsic evidence of fraud" with respect to that transaction. The Bank then moved the court to deny the Armstrongs' discharge in bankruptcy, based on the fact that they had

---

[1]Nebraska law has been amended to limit the value of exempt annuities to $10,000. See Neb. Rev. Stat. § 44-371 (Reissue 1988).

[2]Theodore Armstrong died on May 19, 1997. As Special Administrators for his estate, Lynn Terry and David Armstrong were substituted for him in this appeal.

transferred property with the intent to hinder, delay, or defraud their creditors.  The court found that the Armstrongs had acted with fraudulent intent, and granted the Bank's motion.  The district court affirmed both conclusions, and we affirmed on appeal.  See Armstrong I, 931 F.2d at 1237.

Subsequently,[3] Phillip Kelly, the trustee of the Armstrongs' bankruptcy estate, filed this action in district court, seeking to set aside each of the following transactions:  the sale of David's Maverick stock to Theodore; the sale of the Armstrongs' house to Theodore; David's pledge of his remaining Maverick stock to Omaha State Bank; David and Hannah's pledge of vehicles to Omaha State Bank.  On each of his claims, the jury found against Kelly.  Kelly now appeals the section 548(a)(1) actual fraud claims as to all four transfers and all defendants, and the section 548(a)(2) constructive fraud claim with respect to David's pledge of stock to Omaha State Bank, asserting several points of error.

## II.  DISCUSSION

### A.  Collateral Estoppel

Kelly asserts that the Armstrongs are precluded from relitigating the issue of fraudulent intent because the bankruptcy court made an earlier finding that they transferred property with intent to hinder, delay, or defraud their creditors.  We do not agree that the bankruptcy finding is controlling in this case.

---

[3]In the interim, the Armstrongs also objected to the Bank's million dollar claim against their estate.  They argued that the claim was extinguished by the Bank's failure to give proper notice of the sale of $950 worth of hay and equipment.  The bankruptcy court found in favor of the Armstrongs and the district court affirmed.  We reversed on appeal, because we concluded that collateral estoppel from our holding in Armstrong I barred the lower courts' finding.  See Armstrong II, 44 F.3d at 665.

-4-

The doctrine of collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue . . . and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Four requirements must be met before a finding in a previous case is conclusive: (1) the issue must be identical to that involved in the prior proceeding; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. See Farmland Indus., Inc. v. Morrison-Quirk Grain Corp., 987 F.2d 1335, 1339 (8th Cir. 1993).

The issue decided in the discharge proceeding is different from the issue presented in this case. The bankruptcy court denied the Armstrongs' discharge because it found that they had acted with intent to hinder, delay, or defraud their creditors. That finding refers to the Armstrongs' conduct in the administration of their estate generally. The only conclusion that necessarily follows from the bankruptcy court's finding is that, at some point during the activity preceding the filing of the bankruptcy petition, the Armstrongs' behavior indicated an intent to hinder, delay, or defraud their creditors. This case involves four distinct transactions, and the issue is whether any of them, individually, involved fraudulent intent. That question is not answered by the bankruptcy court's general finding. Moreover, even if we were to determine that the issues are sufficiently similar, we still could not justify the use of issue preclusion against Theodore or Omaha State Bank, neither of whom were parties to the discharge litigation, and neither of whom had any opportunity to litigate the issue decided in that case. Accordingly, none of the defendants in this case can be collaterally estopped from litigating the issue of the Armstrongs' intent in making the contested transfers.

**B.    Burden of Proof**

Kelly argues that the district court erred in failing to instruct the jury that, if it were to find multiple badges of fraud with regard to any transfer, the burden would shift

to the defendants to establish a legitimate supervening purpose for making that transfer. The district court instructed the jury that it could "give the presence or absence of [badges of fraud] such weight as [the jury thought] the[ir] presence or absence deserve[d]." Kelly contends that the common law of fraudulent conveyances shifts the burden of both production and persuasion to the defendants once multiple badges of fraud have been established, and furthermore, that Federal Rule of Evidence 301[4] should not be applied to change this allocation of burdens. We agree.

In an action under 11 U.S.C. § 548(a)(1), it is unlikely that a trustee will be able to present adequate direct evidence to establish the debtor's intent to defraud creditors. See In re Acequia, Inc., 34 F.3d 800, 805-06 (9th Cir. 1994). Therefore, courts look for common indicia, or badges of fraud, which have frequently bespoken fraudulent intent in the past. Some badges of fraud are: (1) actual or threatened litigation against the debtor; (2) a transfer of all or substantially all of the debtor's property; (3) insolvency on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention of the property by the debtor after the transfer. See, e.g., Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991); see also In re Sherman, 67 F.3d 1348, 1354 (8th Cir. 1995) (listing badges of fraud in a fraudulent conveyance case governed by Missouri law). Once a trustee establishes a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent. See Acequia, 34 F.3d at 806; In re Bateman, 646 F.2d 1220, 1223 (8th Cir. 1981). In such cases, "the burden shifts to the transferee to prove some 'legitimate supervening purpose' for the transfers at issue." Acequia, 34 F.3d at 806.

---

[4]Rule 301 provides that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

Federal Rule of Evidence 301 states that a presumption imposes upon a party against whom it is directed the burden of production, or going forward with the evidence, but does not shift the burden of proof, or persuasion. Long-standing principles of substantive law regarding presumptions, however, will often trump the provisions of Rule 301. See, e.g., James v. River Parishes Co., 686 F.2d 1129, 1133 (5th Cir. 1982) (stating that "th[e] inference or presumption of negligence [on an admiralty law issue] . . . is not governed by Rule 301 . . . [but] is determined, as a matter of substantive law, in light of the considerations that prompted its adoption"). We have explained in previous cases that, upon a showing of multiple badges of fraud, "'[t]he burden which shifts . . . is not a burden of going forward with the evidence requiring the bankrupt to explain away natural inferences, but a burden of proving that he has not committed the objectionable acts with which he has been charged.'" Bateman, 646 F.2d at 1223 n.4 (quoting Shainman v. Shear's of Affton, Inc., 387 F.2d 33, 37 (8th Cir. 1967)).

The instruction given by the district court—that badges of fraud, if found, could be given whatever weight the jury thought they warranted—could potentially have resulted in the jury's improper allocation of the burden of proof. As the case was submitted, the jury was free to return a verdict in favor of the defendants, despite finding the existence of multiple badges of fraud and disbelieving the defendants' explanations for the transfers. The district court's failure to instruct the jury properly regarding the burden of proof constitutes reversible error. See American Eagle Ins. Co. v. Thompson, 85 F.3d 327, 332 (8th Cir. 1996). Therefore, the four actual fraud claims under section 548(a)(1) must be remanded for a new trial.

We have considered the other issues raised by Kelly, including the district court's denial of his motion for judgment as a matter of law on his constructive fraud claim under section 548(a)(2), and we conclude that they are without merit. Accordingly, we affirm the judgment of the district court in all other respects.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded for a new trial.


A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.