**In the Matter of David N. & Hannah ARMSTRONG, Debtors.**

**United States of America, by and through David N. Armstrong, & Hannah Armstrong, Plaintiffs,**

**v.**

**Hartford Casualty Insurance Company; ABC Company; and XYZ Corporation, Defendants.**

**Bankruptcy No. BK86–03714.
Adversary No. A98–4006.**

United States Bankruptcy Court,
D. Nebraska.

June 8, 1999.

Martin J. Troshynski, Kelly, Scritsmier & Byrne, North Platte, NE, for defendant.

Michael G. Helms, Phoenix, AZ, for United States of America, by and through David and Hannah Armstrong.

### JOURNAL ENTRY

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This matter is before the Court upon defendant Hartford Casualty Insurance Company's (hereinafter "defendant") Motion to Dismiss Adversary Proceeding (Fil.# 23), and plaintiffs' (hereinafter the "Armstrongs" or the "debtors") Response to Motion to Dismiss (Fil.# 25). The Motion to Dismiss is sustained.

### FACTS

In this adversary proceeding, the Armstrongs assert that the Chapter 7 Standing Trustee (hereinafter "trustee") wrongfully failed to object to the claim of Community First Bank f/k/a the Abbott Bank f/k/a Bank of Hemingford (the "Bank"), that such an objection would have been sustained, and that the defendants, the trustee's bonding companies, are therefore liable for the amount of the Bank's claim.

Prior reported decisions in this case set forth many facts relating to the underlying thirteen-year-old bankruptcy case and related adversary proceedings. *See In re Armstrong,* 931 F.2d 1233 (8th Cir.1991) (hereinafter *"Armstrong I"*) *affirming* 93 B.R. 197 (Bankr.D.Neb.1988), 97 B.R. 565 (Bankr.D.Neb.1989), *and* 127 B.R. 852 (D.Neb.1989); *see also Abbott Bank v. Armstrong,* 44 F.3d 665 (8th Cir.1995) (hereinafter *"Armstrong II"*); *see also In re Armstrong,* 201 B.R. 526 (Bankr.D.Neb. 1996) (hereinafter *"Armstrong 1996"*). I take judicial notice of these prior decisions and of all proceedings in the Chapter 7 bankruptcy case and related adversary proceedings.

The Armstrongs filed for Chapter 11 protection on December 31, 1986 and later voluntarily converted to a Chapter 7. On January 27, 1987, the Bank filed a proof of claim for $810,396.37, plus interest. In March of 1989, the Bank successfully prosecuted an adversary proceeding under 11 U.S.C. § 727(a)(2)(A) and the debtors were denied a Chapter 7 discharge. "The denial of discharge [was] predicated on a holding that the Armstrongs defrauded a creditor and that the Bank was that creditor." *Armstrong II,* 44 F.3d at 666. The denial of discharge was affirmed on appeal to the Eighth Circuit. *See Armstrong I.*

On June 18, 1990, the debtors filed an objection to the Bank's claim asserting that the Bank was the recipient of prepetition and postpetition transfers which were avoidable under § 547 of the Bankruptcy Code, that the Bank waived its right to a deficiency claim due to a failure to provide adequate notice of a sale of collateral and that the trustee, at the request and for the

sole benefit of the Bank, sold various machinery and equipment (Fils.# 177, # 194). The objection was sustained by the Bankruptcy Court, and affirmed on appeal to the District Court. However, on further appeal, the Eighth Circuit Court of Appeals reversed, holding that the debtors were collaterally estopped from challenging the Bank's claim. The Eighth Circuit found it relevant that in the prior denial of discharge action the Armstrongs made no mention of the notice of sale issue, yet they were aware of the sale at that time. *See Armstrong II*, 44 F.3d at 666–667.

Some ten (10) months after filing the objection to the Bank's claim in *Armstrong II*, the debtors made a formal written request upon the trustee to object to the Bank's claim. (Exhibit No. 146, BK86–3714; Motion for Summary Judgment, Fil. # 407); (*See also* Adv.Proc. No. A98–4006, Fil. # 1, ¶ 10; Fil. # 19 p. 3, 6–8; p. 4, 24–25). Debtor's four page formal request set forth in detail the facts and law supporting debtors' objection to the Bank's claim. (Exhibit No. 146). The trustee declined debtors' request stating that, as the debtors had already assumed the burden of pursuing an objection to the Bank's claim, any objection filed by the trustee would be a duplication of efforts. (Exhibit No. 150, BK86–3714).

After the *Armstrong II* decision was remanded to the Bankruptcy Court by the Eighth Circuit Court of Appeals, the debtors again requested that the trustee object to the Bank's claim. The trustee declined to file such an objection citing the preclusive effect of *Armstrong II*. The debtors then formally petitioned the Bankruptcy Court to appoint a Special Trustee to prosecute an objection to the Bank's claim, or in the alternative, to remove and substitute the trustee (Fil.# 329). The trustee, the Bank, the United States Trustee, and creditor, Farm Credit Bank of Omaha, all filed objections to the debtors' motion (Fils.# 331, # 332, # 333, # 335). In response to debtors' motion, Chief Bankruptcy Judge Mahoney issued an opinion

directing the trustee to reconsider his position regarding filing an objection to the Bank's claim. After months of litigation, Mr. Thomas Stalnaker, Special Counsel for the trustee, was appointed for the purpose of evaluating and filing an objection to the Bank's claim. (Fil.# 357). On November 1, 1995, Mr. Stalnaker filed an objection to the Bank's claim (Fil.# 369). On November 2, 1995, Chief Judge Mahoney recused himself from this case (Fil.# 373). On September 4, 1996, I sustained the Bank's motion for summary judgment overruling the trustee's objection to the Bank's claim based on the fact that the trustee was barred by the principles of res judicata and waiver arising from *Armstrong II*. *See Armstrong 1996*. Among other things, I concluded that the trustee's decision to forego joining in the prosecution of debtors' objection to the Bank's claim was reasonable as debtors were represented by competent legal counsel and because the trustee was attempting to avoid unnecessary expenses. *Id.*

### LAW

Defendant's Motion to Dismiss (Fil.# 23) is made pursuant to FED.R.CIV.P. 12(b)(6). Defendant requests that the Court take judicial notice of all filings and orders entered in the related bankruptcy proceeding and adversary proceedings. In opposition to defendant's motion to dismiss, debtors have requested that the Court take judicial notice of several filings from the related bankruptcy proceedings, as well as testimony of the trustee in the two (2) trials of the trustee's fraudulent conveyance claims.

Debtors' argue that the defendant's motion should be treated as a motion for summary judgment as the defendant has requested that the Court consider matters outside the Complaint (Fil.# 25, p. 1, 21–26). Under Rule 12(b), if a court considers "matters outside the pleading[s]," a motion to dismiss under Rule 12(b)(6) is to be treated as one for summary judgment. (*See* FED.R.CIV.P. (12)(b)). Both parties have requested that the Court take notice

of matters outside of the pleadings. In particular, debtor's have requested that the Court take notice of testimony given by the trustee in trials of matters related to the underlying bankruptcy proceeding. Both parties have also been provided an opportunity to submit additional evidence. Based upon these facts, debtor's motion is in the nature of a motion for summary judgment.

Summary judgment is to be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.BANKR.P. 7056(c). Pursuant to FED. R.BANKR.P. 7056(c), a non-moving party may not rest upon the mere allegations or denials in the moving party's pleading, but must set forth specific facts showing there is a genuine issue for trial.

Thus, the moving party's burden on summary judgment "may be discharged by a showing that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to make "a showing sufficient to establish the existence of an element essential to [its] cause, and on which it will bear the burden of proof [at trial]." *Id.*

### DISCUSSION

David and Hannah Armstrong filed this adversary proceeding pursuant to 11 U.S.C. § 322 and FED.R.BANKR.P. 2010(b). This is a Chapter 7 bankruptcy case. Therefore, David and Hannah Armstrong are not debtors in possession, and they do not hold the powers and duties of a debtor in possession or a bankruptcy trustee. In this sense, the Armstrongs bring this action in their individual capacities under Bankruptcy Rule 2010(b).

■ The defendant asserts, and I agree, that the Armstrongs are precluded from asserting the claims stated in the Complaint filed in this adversary proceeding.

Preclusion arises from previous litigation to which the Armstrongs were parties. My discussion of the preclusion analysis is, however, preceded by disposing of the Armstrongs' meritless assertion that, since this action is brought by the "United States of America," preclusion can not be predicated on acts or omissions of the Armstrongs or by previous litigation to which the United States was not a party.

The Armstrongs misconstrue the requirement under FED.R.BANKR.P. 2010(b) that a proceeding on a trustee's bond be brought "in the name of the United States." Rule 2010(b) provides:

> (b) **Proceeding on Bond.** A proceeding on the trustee's bond may be brought *by any party in interest* in the name of the United States for the use of the entity injured by the breach of the condition.

(Emphasis added).

■ Under Rule 2010(b), the action is "brought by any party in interest." An action filed under Rule 2010(b) is not a lawsuit brought by the United States. It is an action brought by a party in interest in the name of the United States. *See generally Illinois Surety Company v. United States*, 226 F. 665, 668 (7th Cir. 1915), *aff'd*, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917); *In re Thirteen Chapter 7 Cases of Former Trustee, Thomas M. Germain*, 182 B.R. 375 (Bankr.D.Conn. 1995). This action is therefore brought by the Armstrongs, and the Armstrongs are the real parties in interest. The Armstrongs' assertion that they are entitled to cloak themselves with the innocent mantle of the United States is simply without merit. The defendant is thus entitled to assert that this adversary proceeding should be dismissed on the grounds that the Armstrongs are personally precluded from bringing this action.

■ In furtherance of their contention that their prior actions should not preclude them from bringing this action, the Armstrongs have asserted, and admitted in their brief, that they do not have a finan-

cial interest in this adversary proceeding. (*See,* Adv.Proc. No. A98–4006; Fil. # 25, p. 2, 17–22). However, if the Armstrongs' had no pecuniary interest in this case, they would not be a "party in interest" and they would not have standing to file this action under Rule 2010(b). *See generally Germain,* 182 B.R. at 377–378; *Kapp v. Naturelle Inc.,* 611 F.2d 703 (8th Cir.1979). However, I conclude that the Armstrongs do in fact have a pecuniary interest in this case and that they have standing to bring this suit.

The Armstrongs did not receive a bankruptcy discharge under 11 U.S.C. § 727, because this Court ruled, affirmed by the Eighth Circuit Court of Appeals in *Armstrong II,* that discharge was barred due to the Armstrongs' efforts to hinder, delay, or defraud the Bank. Since the Armstrongs remain personally liable for all prepetition debts to the extent not paid from property of the bankruptcy estate, the Armstrongs will receive a financial benefit to the extent the proceeds of this adversary proceeding are paid to creditors. Payments to creditors will discharge the obligation of the Armstrongs to pay those creditors on a dollar-for-dollar basis. Therefore, the Armstrongs have a pecuniary interest in this adversary proceeding, are parties in interest, and thus have standing to prosecute this adversary proceeding under Rule 2010(b).

However, for the following reasons, I conclude that the Armstrongs are precluded from maintaining this action against the defendant.

*Armstrong I:*

The Eighth Circuit Court of Appeals held, in *Armstrong II,* that the Armstrongs are collaterally estopped from objecting to the Bank's claim. The Armstrongs are also collaterally estopped from asserting, in this case, that the Bank's claim should not be allowed. Therefore, the Armstrongs cannot establish an essential element of the claim stated in their Complaint. Summary judgment should therefore be entered in favor of the defendant.

The Eighth Circuit Court of Appeals, in dismissing *Armstrong II,* specifically held that the Armstrongs were collaterally estopped from objecting to the Bank's claim. The estoppel arose from the failure of the Armstrongs to challenge the Bank's creditor status in *Armstrong I.*

■ There has been a breakdown of the historical privity of party's requirement for application of the doctrine of collateral estoppel. It is now recognized that the doctrine of collateral estoppel may be invoked by a litigant who was not a party to the action out of which the estoppel arose. *Equal Employment Opportunity Commission v. MCI Telecommunications Corp.,* 820 F.Supp. 300, 307 (S.D.Tex.1993). As applied to the facts of this case, the defendant, who was not a party to *Armstrong I* or *Armstrong II,* may invoke the doctrine of collateral estoppel to preclude the Armstrongs from asserting, in this adversary proceeding, that the Bank's claim against the bankruptcy estate should not be allowed.

In order to prevail in this adversary proceeding against the defendants, the Armstrongs must prove, among other things, that the trustee's objection to the Bank's claim would have been sustained. The Armstrongs assert that the Bank's claim would be disallowed because the Bank failed to give proper notice of the sale of its collateral under the Nebraska Uniform Commercial Code. This is the same specific argument that the Armstrongs made in *Armstrong II.* However, the Eighth Circuit held that the Armstrongs were barred from directly asserting this objection to the Bank's claim. The Armstrongs are also collaterally estopped in this adversary proceeding from asserting that the Bank's claim should be disallowed. This adversary proceeding should therefore be dismissed.

*Armstrong II:*

By electing to personally file and prosecute an objection to the Bank's claim after the Eighth Circuit Court of Appeals' deci-

sion in *Armstrong I,* the Armstrongs' are now precluded from asserting that the bankruptcy trustee should have objected to the Bank's claim.

Prior to making the decision to file an objection to the Bank's claim, the Armstrongs had a number of alternative remedies available regarding objecting to the Bank's claim. Those alternative remedies boil down to two alternatives. First, the Armstrongs could have taken action to compel the trustee to object to the Bank's claim, or to join in an objection to the Bank's claim. Second, the Armstrongs simply could have elected to object to the Bank's claim in their individual capacity as is permitted by Bankruptcy Code § 502. The Armstrongs elected the second course of action and filed an objection to the Bank's claim without making the trustee a party to the objection. The trustee could have been brought into the proceeding objecting to the Bank's claim in several ways:

1) The Armstrongs could have notified the trustee of the basis for objecting to the Bank's claim, and if the trustee declined to object to the Bank's claim, the Armstrongs could have filed a motion with the bankruptcy court requesting a court order that the trustee object to the Bank's claim or be removed from administration of the case. Sometime later, after the remand of *Armstrong II* to the Bankruptcy Court, such a motion was filed by the Armstrongs.

2) The Armstrongs could have attempted to compel the trustee to join in their objection to the Bank's claim. Under the Federal Rules of Civil Procedure and the Bankruptcy Rule counterparts, the Armstrongs could have requested a court order that the trustee be brought into the litigation as a party under Rule 19.

The Armstrongs elected to formally object to the Bank's claim, to diligently prosecute that objection through trial, and to take no timely action to bring the Chapter 7 trustee into the litigation.

Having objected to the Bank's claim and diligently prosecuted that claim, and having lost, the Armstrongs are now precluded from asserting that the trustee should have objected to the Bank's claim. Because of the preclusion effect of *Armstrong II,* this adversary proceeding should be dismissed.

In response to this conclusion, the Armstrongs' counsel would assert that his letter of April 5, 1991, made a formal demand upon the Chapter 7 trustee to join in the prosecution of the Armstrongs' objection to the Bank's claim. I conclude that the April 5, 1991 letter does not have the significance attached to it by the Armstrongs' counsel. First, this letter was not written and delivered to the trustee until some ten (10) months after the Armstrongs objected to allowance of the Bank's claim. The demand was simply untimely. It was not made until pretrial proceedings were substantially completed regarding the objection to the Bank's claim. For example, by the time the demand was made upon the trustee, there had already been arguments made to the Court regarding the Bank's motion for summary judgment. Second, the demand letter of April 5, 1991, does not advise the trustee that the Armstrongs had any concern whatsoever about being collaterally estopped or otherwise precluded from objecting to the Bank's claim. Third, as I previously concluded,[1] it was reasonable for the trustee, at his discretion, to elect not to spend bankruptcy estate money to join in the prosecution of an objection to the Bank's claim. The Armstrongs were represented by attorney Michael Helms, who is a highly qualified bankruptcy attorney and federal court litigator. Given the diligent prosecution of the objection to Bank's claim by Mr. Helms, it was reasonable for the Chapter 7 trustee to elect not to expend estate money for duplicative legal services.

---

**1.** *See Armstrong 1996.*

*Armstrong III:*

By filing a motion with the bankruptcy court for an order compelling the trustee to object to the Bank's claim, after remand of *Armstrong II* from the Eighth Circuit Court of Appeals, the Armstrongs are now precluded from asserting that the trustee should have objected to the Bank's claim at an earlier point in time. In essence, the Armstrongs took action after remand from *Armstrong II*, to force the Chapter 7 trustee to do something which was to no avail. By forcing and coercing the trustee into objecting to the Bank's claim, the Armstrongs' forced the bankruptcy estate to incur costs and expenses in connection with the diligent objection and prosecution of the Bank's claim after remand. Having elected to force the trustee into filing a tardy objection to the Bank's claim, the Armstrongs are precluded from now asserting that the trustee should have done something different at an earlier point in time.

*Conclusion.*

Due to their participation in previous litigation, the Armstrongs are simply precluded from asserting that the trustee should have objected to the Bank's claim at a much earlier point in time. Dismissal of this case is fair and equitable. The Armstrongs come before the court with unclean hands. They seek to impose liability for an alleged failure of the trustee to timely object to the Bank's claim, yet they themselves, in the first instance, failed to object to the Bank's claim or to challenge the Bank's claim, and in the second instance, chose to personally (and individually) file an objection to the Bank's claim. The Armstrongs are attempting to accomplish indirectly through this case that which they have been precluded from doing directly by the Eighth Circuit Court of Appeals in *Armstrong II.*

It must be kept in mind that throughout these proceedings, despite the Armstrongs' efforts to cloak themselves in the innocent mantle of the United States, or their attempt to frame arguments for the

benefit of the bankruptcy estate, it remains clear that the Armstrongs, in their individual capacities, are the real parties in interest with pecuniary interests in the outcome of any direct or indirect challenge to the Bank's claim.

Before closing, I need to comment on two additional issues: (1) whether the statute of limitation has run on this case, as alleged by the defendant, and (2) the attempt by the Armstrongs to again assert an alleged conflict of interest for the trustee and its Special Counsel.

 *Statute of Limitations:* The defendant's assertion that the applicable statute of limitations has run on this case, is without merit. This is a Chapter 7 case in which the Chapter 7 trustee has not been discharged. Accordingly, the two year statute of limitations provided in 11 U.S.C. § 322(d), has not run. The defendant's assertion that § 322(d) is not controlling and that a Nebraska statute of limitations, NEB.REV.STAT. § 25–222 (Reissue 1995) [two year statute of limitation] or NEB.REV. STAT. § 25–207 (Reissue 1995) [four year statute of limitation] is controlling, is simply not persuasive. The claim asserted by the plaintiffs is inherently a federal claim arising under federal law and therefore is subject only to the applicable federal statute of limitations. *See Oles Grain Co. v. Safeco Ins. Co. of America,* 221 B.R. 371 (N.D.Tex.1998).

 *Conflict of Interest:* The Armstrongs assert that the refusal of the trustee to object to the Bank's claim is "due to the trustee's clear and actual conflict of interest in his dealings with the Bank." (*See* Debtors' Response to Motion to Dismiss (hereinafter "Response"), p. 2, 23–26). This assertion is not appropriate and I regard it as an attempt to obfuscate the issues before the court by raising a conflict of interest question that has been judicially determined to be without merit. I have considered imposing sanctions upon Mr. Helms for having again raised this issue for the fourth time. However, I decline to

impose sanctions at this time as it is not clear to me that the prior orders overruling Mr. Helms' conflict of interest allegation constitute "final orders." The prior rulings, of course, constitute the law of the case. *Little Earth of the United Tribes, Inc. v. United States Dep't of Housing and Urban Dev.*, 807 F.2d 1433, 1440–1441 (8th Cir.1986). It is certainly inappropriate for Mr. Helms to have raised the conflict issue without disclosing in his Response that his arguments have previously been overruled on numerous occasions. He thus imputes ill motive to the trustee without good cause and without appropriate disclosure of prior judicial decisions.

On numerous occasions during the pendency of the bankruptcy case, debtors have alleged that the trustee has a conflict of interest. However, at each juncture the court has overruled the argument and concluded that the actions of the trustees did not create an actual conflict of interest.

1. On July 27, 1987, the former trustee, David Nuttleman, filed an Application For Order Authorizing Trustee to Employ Special Counsel (Fil. #59), requesting leave to retain the law firm of McGrath, North, O'Malley & Kratz, P.C. ("McGrath North"), in order to assist him in litigating alleged fraudulent transfers made by the debtors. The trustee specifically sought the services of McGrath North due to the firm's knowledge and expertise in the fields of bankruptcy insolvency and debtors and creditors rights "as well as their knowledge and expertise with respect to the subject matter upon which they [were] retained due to their pursuit of some of the same transfers, prior to the initiation of bankruptcy proceedings by [the] debtors." (*See* Fil. #59, ¶ 4). On this same date, a representative of the McGrath, North law firm filed an affidavit attesting to the firm's willingness to be so employed. (Fil. #60).

2. On October 2, 1987, debtors' filed an Objection and Motion to Disqualify Attorneys (Fil. #67) alleging that the trustee's employment of attorneys which represented creditor Abbott Bank presented a conflict of interest.

3. On November 13, 1987, Chief Judge Mahoney overruled debtors' Objection and Motion to Disqualify (Fil. #75).

4. On October 9, 1990, debtors' filed an Objection to Continued Employment of Counsel (Fil. #189), again objecting to the trustee's continued employment of McGrath North, alleging numerous grounds for finding a conflict of interest. In particular, debtors' alleged "[t]hat the trustee and former trustee herein have acted solely at the direction and for the benefit of the Abbott Bank–Hemingford at all times while being represented by said bank's attorneys herein." (Fil. #189, ¶ 3(d)).

5. On January 28, 1991, in a lengthy opinion, Chief Judge Mahoney rejected the debtors' numerous assertions of conflict, ultimately finding that "there is no actual conflict which would constitute grounds for disqualifying McGrath, North ..." (Fil. #233, p. 8).

6. On February 6, 1991, debtors' filed a Motion For Reconsideration (Fil. #237) arguing that the prior Order was contrary to law and the evidence presented.

7. On March 14, 1991, the court again overruled the debtors' Motion finding that "[t]he evidence does not indicate that the trustees have acted under the influence of the Abbott Bank or its attorneys. Rather, the evidence suggests that the trustees have exercised independent judgment in the performance of their duties." (Fil. #257, p. 5).

8. On August 22, 1995, debtors' filed a Renewed Motion For Removal and Substitution of Trustee (Fil. #356) asserting that the trustee was in a position of conflict of interest in regard to making a determination of whether to object to the Bank's claim as; the trustee had employed the Bank's attorneys in prior matters and, the trustee is dependant upon the Bank to pay attorney's fees and litigation expenses of the trustee in a related proceeding.

9. On November 6, 1995, Chief Judge Mahoney denied debtors' original Mo-

tion and Renewed Motion for Removal and Substitution of Trustee stating that the court had "considered all of the reasons articulated by counsel for the debtors for removal of the trustee and finds that there are insufficient grounds for such removal." (Fil. #371, p. 1).

10. On December 14, 1995, debtors filed a Motion for Leave to Intervene in the Objection to Banks' Claim filed by the trustee asserting, in part, that intervention was necessary as the trustee had a conflict of interest because the bank financed previous litigation by the trustee (Fil. #388).

11. On February 13, 1996, this Court denied debtors' Motion to Intervene (Fil. #405).

12. On June 11, 1996, James E. Abbott ("JEA"), trustee for former shareholders of Abbott Group (bank), filed a Motion to Litigate on Behalf of the Estate in Name of Trustee the Fraudulent Transfer Action then pending in Federal District Court (Fil. #416).

13. On June 25, 1996, debtors filed an Objection to JEA's Motion to Litigate alleging, in part, an actual conflict of interest. (Fil. #423).

14. On July 1, 1996, this Court overruled the debtors' Objection (Fil. #426).

The allegations that the trustee has a clear and actual conflict of interest due to his dealings with the Bank have been fully and fairly litigated by Mr. Helms and he has lost on every occasion. Mr. Helms is hereby admonished that if he raises this issue again, other than for purposes of preserving his clients' right to appeal, at the trial court level, I will consider the imposition of sanctions.

## CONCLUSION

The defendant's Motion to Dismiss Adversary Proceeding (Fil. #23) will be sustained.